## McWhorter v. Green.

### Opinion delivered January 12, 1914.

1. ESTATE IN ENTIRETY—RIGHT OF SURVIVOR.—A conveyance of land to a husband and wife, constitutes them tenants by the entirety, the survivor taking the whole estate. (Page 3.)

2. WILLS—ACCEPTANCE OF BENEFITS—ESTOPPEL ESTATE IN ENTIRETY.— Where the husband, who, with his wife, were tenants of land by the entirety, attempted to convey the whole estate to his son by will, and the son assumed the ownership of the property, and the wife accepted benefits under the will accruing to herself, and treated the son as the owner of the property, her acceptance is a confirmation of the terms of the will, and operates to give effect to the will. (Page 4.)

Appeal from Sevier Chancery Court; *James D. Shaver,* Chancellor; reversed.

*James S. Steel, J. S. Lake* and *J. D. Head,* for appellant.

1. The law requires election. 92 Ark. 15; 41 *Id.* 64; 30 Gratt. (Va.) 83; 96 Ark. 251; 48 N. Y. Supp. 32.

2. Mary E. McWhorter affirmed the will by standing by and accepting support, maintenance, etc., under its provisions. Besides, it was a family settlement.

3. She was estopped and barred by twenty years enjoyment and the seven-year statute. 62 Ark. 316; Kirby's Digest.

4. Laches is a complete bar. 55 Ark. 85; 64 *Id.* 345; 62 *Id.* 316.

*W. H. Collins,* for appellee.

1. No election was necessary and the will was never affirmed by Mary E. McWhorter. Nor was she estopped nor barred. 55 Ark. 85, is not in point.

2.    There was no laches.

Hart, J.    This is an action in ejectment, commenced March 16, 1912, by Nancy Green against Thomas Mc-Whorter to recover an undivided one-sixth interest in 200 acres of land.    McWhorter filed an answer and cross-complaint, and, by consent, the cause was transferred to equity.    A decree was entered by the chancellor in which plaintiff was given an undivided one-sixth interest in the land, as prayed for in her complaint; and to reverse that decree this appeal is prosecuted.

The material facts, briefly stated, are as follows:    On February 10, 1873, B. F. Forney and wife, by warranty deed, conveyed to William B. McWhorter and Mary E. McWhorter, his wife, the lands in question.    On the 23d day of March, 1883, William B. McWhorter made a will whereby he devised the lands in question to his sons, William F. and Thomas McWhorter, with the proviso that if either of said sons died without issue the lands should go to the survivor.    The will provided that the devise was made with the understanding that his two sons were to take care of and support his wife, Mary E. McWhorter, during her natural life, and his daughters, Nancy Mc-Whorter and Kate C. McWhorter, until they married. The parents and their two daughters and the two sons above referred to lived on the land until W. B. McWhor-ter's death, which occurred in 1884.    William F. Mc-Whorter had been in ill health for several years prior to his father's death, and died in 1885.    The widow of W. B. McWhorter and the two unmarried daughters referred to in the will continued to remain on the place with Thomas McWhorter.    Nancy McWhorter remained there until she married, on February 11, 1897.    Mary E. Mc-Whorter continued to live with her son, Thomas Mc-Whorter, until her death, in October, 1903.    Thomas Mc-Whorter lived on the land and supported his mother until her death.    His sister, Nancy McWhorter, now Nancy Green, lived with him until she married, as above stated, and was supported by him.    The defendant, Thomas Mc-Whorter, has paid the taxes on the land since his father's

death, and has always claimed the same under the terms of the will. The will was duly proved after his father's death. He cleared up an additional amount of land after his mother's death, and made improvements upon the place, all of which cost more than two thousand dollars. Two of his brothers testified that after his father's death the land was always considered by the family as belonging to Thomas McWhorter, under the terms of the will, and that their mother continued to reside there with him and be supported by him until her death. That the unmarried sisters lived there until they married. That their mother recognized Thomas as the owner of the place until her death, and never claimed to have any interest in it after Thomas took charge of it under the will. A neighbor of the family, who had known them for many years, testified that after her husband's death, Mary E. McWhorter stated to him that the place belonged to Thomas, and that he had exclusive control of it. That he had heard the plaintiff, Nancy Green, state that she had no interest in the place. These witnesses also testified as to the value of the improvements put upon the place by Thomas McWhorter, and to the fact that he supported his sisters until they married and his mother until her death. Nancy Green, the plaintiff, testified that after her father's death she heard her mother say that her father had no right to will it to the defendant, Thomas McWhorter, and that she wanted each of the children to have his part of the property. On cross examination, she stated that her mother and father had over 400 acres of land when her father died. By the terms of the will, other tracts of land were devised to other children of the said William B. McWhorter, but no interest in the estate was given to the parties to this suit, except as above stated.

The conveyance of the land in question to William B. McWhorter and Mary E. McWhorter, husband and wife, constituted them tenants by the entirety, the survivor taking the whole estate. *Roulston* v. *Hall,* 66 Ark. 305. Therefore, at the death of William B. McWhorter, his

widow, Mary E. McWhorter, was entitled to the whole of the land in question. Under the terms of the will, William B. McWhorter devised the lands in question to his son, Thomas McWhorter, in consideration that his said son should support his mother during her natural life and his two sisters until they married. This he did, and the preponderance of the evidence shows that his mother knew that he was claiming the land under the terms of the will. She continued to live with her son, and accepted the support provided her under the terms of the will, which was in the nature of an annuity left to her by her husband. The rule is well settled that if an outsider undertakes to dispose of the property of another person by will and that person accepts a benefit under the will, such acceptance is a confirmation of the terms of the will and operates to estop such person to object to the disposition of his own property to another. *Fitzhugh and Wife* v. *Hubbard,* 41 Ark. 64; *McDonald* v. *Shaw,* 92 Ark. 15, and cases cited.

The proof in this case clearly shows that Mary E. McWhorter was fully aware of the contents of her husband's will; that she knew that the property in question had been devised in it to her son, Thomas, in consideration that he should support her during her natural life and her two daughters until their marriage; that she recognized the will as valid, and accepted the benefits accruing to her under it, and lived with her son until her death, without claiming any interest in the property, and knowing that he was claiming it under the terms of the will. She did not attempt in any way to dispose of the property and, according to a clear preponderance of the testimony, recognized the fact that her son was claiming the property under the will.

Under the facts and circumstances of this case, she must be deemed to have elected to give effect to the will by accepting the benefits given to herself under the will and by allowing her son, Thomas, to have the property her husband intended that he should have. *Hoggard* v.

*Jordan,* 140 N. C. 610, 4 L. R. A. (N. S.) 1065, and case note.

It follows that the chancellor should have rendered a decree in favor of the defendant and cross complainant, Thomas B. McWhorter; and for the error in not doing so the decree will be reversed and the cause remanded with directions to the chancellor to enter a decree in favor of Thomas McWhorter in accordance with the opinion.