## GOODRUM *v.* GOODRUM.

### Opinion delivered October 29, 1892.

1. *Bequest in lieu of dower—Election.*

   Acceptance by a widow of a bequest of money under her husband's will, with knowledge that it was intended in lieu of dower, will be presumed to be an election to take under the will, notwithstanding she gave no receipt for the money and expressed no intention, in words or in writing, to make such election.

2. *Election made under mistake—When retracted.*

   An election by a widow to take a bequest under her husband's will, in lieu of dower, may be retracted by her where such election was made in ignorance of the insolvency of the estate, if her ignorance was not culpable, and no prejudice will result to the estate or to parties interested therein.

3. *Dower—Allotment.*

   Where, after a widow elected to take a bequest in lieu of dower and before she retracted such election, the executor sold certain lands of her husband's estate, she is not entitled to dower therein, but an equivalent to her dower in the lands sold will be assigned to her out of other lands of the estate.

Appeal from Lonoke Chancery Court.

DAVID W. CARROLL, Chancellor.

*Sam W. Williams* for appellant.

1. Under the circumstances of this case, there was no election to take under the will. Within twelve months the widow executed a quit-claim deed to the heirs, and brought suit for dower within sixteen months. This

brings her within the statute. 52. Ark. 193; Mansf. Dig. secs. 2596-7 and 2584.

2. The right of election is perfect for eighteen months after the husband's death, unless the widow does some act to estop her, or put the estate to disadvantage; otherwise she can renounce in the mode prescribed by statute. 60 Mo. 444; 20 Pick. 556. The right of the widow to elect liberally construed. 3 Sandf. Ch. 519; 5 Paige, Ch. 318.

3. An election must be made with full knowledge of all the facts, to bind the party. 4 Jones, Eq. (N. C.), 178; 2 Rich. (S. C.), 218. An election, before the circumstances necessary to a judicious and discriminating choice are ascertained, is not binding. 36 Pa. St. 467; 2 Yeates (Pa.), 302; 43 Pa. St. 474; 13 Cal. 133; 7 Ga. 20; 3 N. J. Eq. (2 Green), 504; 20 Pick. 556; 15 N. Y. 365. See also 9 Mo. 11, 60 *id.* 444, 67 *id.* 175, 91 *id.* 465 and 92 *id.* 647, upon a statute similar to ours. In Ohio a solemn election made and declared in court may be set aside on petition. 11 Oh. St. 386. The mere receiving and occupying property is not an election. 20 Pick. (Mass.) 556. See 12 How. 256. See also 9 Gill (Md.), 361; 2 Des. (S. C.), 53; 4 *id.* 274; 4 McLean, 99; 97 N. C. 236; 1 S. E. Rep. 452.

*U. M. & G. B. Rose* and *Thos. C. Trimble* for appellees.

Mrs. Goodrum by her acts has made her election to take under the will. "Acceptance of the testamentary provision is the most ordinary way of making election." 2 Jarman, Wills, 40. Mr. Pomeroy says: "The rule seems to be plainly deducible from the American cases, which are placed in the note, that where a widow is required to elect between a testamentary provision in her favor and her dower, any unequivocal act of dealing with the property given by the will as her own, or the exercise of any unmistakable act of ownership over it, if

done with her knowledge of the right to elect, and not through a clear mistake as to the position and value of the property, will be deemed an election by her to take under the will and to reject her dower." 1 Pomeroy, Eq. Jur. sec. 515. Pomeroy is sustained by all the authorities, except perhaps 97 N. C. 236. See 12 Bush, 510; 3 Green, 235; 1 Bailey, 324; 43 Penn. St. 484; 77 *id*. 160; 25 *id*. 468; 5 J. J. Marsh. 214; 17 S. & R. 16; 40 Ga. 562; 54 Cal. 207; 6 Heisk. 516; 92 N. C. 706; 14 Gratt. 518; L. R. 2 Eq. Cas. 834; 23 N. J. Eq. 171; 76 Ga. 759; 58 Ga. 319; 41 Iowa, 324; 68 Mo. 441; 7 Bush, 367.

HUGHES, J.  This is a suit brought by appellant for dower in the lands of her deceased husband, William Goodrum, who died on the 13th of October, 1886, leaving a will in which he bequeathed to the appellant a policy of insurance upon his life for two thousand dollars, expressly in lieu of dower in his estate. In February, 1887, about three and a half months after the testator's death, the money was collected on the policy by the executor of the will and paid to the appellant. It was explained to her by the executor of the will that the bequest was in lieu of dower in the estate, and this she seems to have fully understood. She was not ignorant of her legal rights. So far as appears from the evidence in the case, no inventory of the estate had been made at the time, and whether the appellant knew the situation of her husband's estate or the amount of debt against it, or whether it was solvent or not, or the relative value of the bequest to her and her dower interest, does not appear, save from the circumstances of the case. On the 10th of October, 1887, the appellant renounced the will by quit-claim deed to the heirs. She then brought suit for dower. It is contended that she had elected to take under the will, and that she cannot retract that election.

Her attorney, Col. Sam W. Williams, testified that, a few days before the expiration of twelve months after the death of the testator, he "looked into the condition of the estate, and found that it was in debt in excess of the assets, and that Mrs. Goodrum would get nothing under the will, as all there was was subject to debts." He then advised her to renounce and take dower.

It does not appear that Mrs. Goodrum gave any receipt for the $2000 paid her, or that she ever expressed in writing or by words that it was her purpose in receiving it to thereby make an election to take the bequest made to her in the will in lieu of her dower. But this is naturally and legitimately to be inferred, as she is presumed to have known her legal rights and that she could receive the money only as a devisee under the will. When the money was paid to her she had but recently lost her husband, and it is natural to presume that she was still suffering from the affliction. There had, at the time, been no inventory or statement of the condition of her husband's estate made, as far as the evidence shows, and in all probability she did not then know the amount of indebtedness against it, whether it was solvent or insolvent. Her action in taking the $2000 bequeathed her in lieu of dower indicates that she believed the estate to be solvent, as otherwise it is not to be presumed she would have relinquished her dower without expecting to get something in lieu of it. Her husband had made the bequest to her, and she doubtlesss thought she could retain it. Is she bound by the election, under all the circumstances of the case?

No general rule can be laid down in all cases as to what will or will not constitute an election that may not be retracted in proper time. Each case must be determined upon its own circumstances. 2 Story's Eq. Jur. sec. 1097. In the case of *Fitzhugh* v. *Hubbard*, 41 Ark. 64, this court, through Judge Smith, defines election in

1. Equitable doctrine of election.

such cases as this as follows: "An election, in equity, is the choice which a party is compelled to make between the acceptance of a benefit under an instrument and the retention of some property, already his own, which is attempted to be disposed of in favor of a third party, by virtue of the same instrument." "A person, who accepts a benefit under an instrument, must adopt the whole instrument, giving full effect to its provisions and renouncing every right inconsistent with it." This is the equitable doctrine of election.

2. When election may be retracted.

An election once made, under circumstances which show that the party required to elect had, or might by the exercise of reasonable diligence have had, such information in regard to the relative value of those things between which a choice must be made as would enable the party making the election to make an intelligent and discriminating choice, cannot be retracted. When made without such information, it cannot be retracted to the prejudice of the estate, or persons who have changed their condition in consequence of such election.

There can be no revocation of an election, unless the person making it "can restore the other persons affected by his claim to the same situation, as if the acts had not been performed or the acquiescence had not existed." *Yorkley* v. *Stinson*, 97 N. C. 236 ; 2 Story's Eq. Jurisprudence, sec. 1097 ; *Dillon* v. *Parker*, 1 Swanston, 382.

If one make an election before the circumstances necessary to a judicious and discriminating choice are ascertained, we take it that he would not be bound, unless he was culpable for his ignorance in the premises. One cannot close his eyes and refuse to be informed, and afterwards plead ignorance.

The Supreme Court of Pennsylvania lays down the rule much stronger than we have stated above in *Anderson's Appeal*, 36 Pa. St. 496, which holds that the burden of proof in a case of this kind is upon the party who con-

tends that a binding election has been made to prove that the party electing did have full knowledge of the relative value of the things he is to choose between, and of the circumstances necessary to a judicious and discriminating choice. We do not find it necessary to determine in this case where the burden of proof rested, in this behalf, because we find that the circumstances of this case show that Mrs. Goodrum, at the time she made her election, did not have the information that would have enabled her to make an intelligent and discriminating choice between the bequest in the will and her dower interest.

We therefore are of the opinion that, as it may be done without prejudice to the estate, she should be allowed to retract her election and that dower should be assigned her in the lands of which her husband died seized, save certain lands sold by the executor of the will before she filed her renunciation. She can have no dower in these, but dower will be assigned out of other lands equivalent to her dower in the lands sold. With these directions, the decree is reversed and remanded.

*3. As to allotment of dower.*